

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| PC SERVICE SOURCE, INC. § | |
| § | |
| Debtor, § | |
| § | |
| HEWLETT-PACKARD CO., as § | |
| successor in interest to COMPAQ § | |
| COMPUTER CORP., § | |
| § | |
| Appellant, § | No. 3:05-CV-227-M |
| § | |
| v. § | |
| § | |
| JEFFREY H. MIMS, TRUSTEE, § | |
| § | |
| Appellee. § | |

## MEMORANDUM OPINION AND ORDER

Hewlett-Packard Co. ("HP") appeals the Bankruptcy Court's final judgment in favor of Appellee Jeffrey H. Mims, allowing the Debtor PC Service Source, Inc. ("PCSS") to avoid and recover transfers of $917,243.33 made by PCSS to Compaq Computer Corporation, HP's predecessor in interest. For the reasons stated below, the Court **AFFIRMS** the judgment of the Bankruptcy Court.

### FACTS AND PRIOR PROCEEDINGS

PCSS was a publicly traded company in the business of buying and selling computer parts. PCSS owned Cyclix Engineering Corp. ("Cyclix"), a personal computer and printer repair business. PCSS bought computer parts from original equipment manufacturers, including

-1-

Compaq.

PCSS filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 29, 2000. The Bankruptcy Court converted the case to a case under Chapter 7 on March 22, 2002, and appointed Mims as the Chapter 7 bankruptcy trustee. Cyclix had filed a separate petition for relief under Chapter 11 on August 29, 2000.

In June 2000, PCSS made six payments to Compaq by checks drawn from its general operating account.[1] Mims brought an adversary proceeding to avoid and recover these six payments, totaling $928,624.23. The Bankruptcy Court held a trial between September 21 and 23, 2004.

In its Memorandum Opinion and Order dated December 3, 2004, (the "Bankruptcy Order") the Bankruptcy Court held that the six payments would be avoided as preferences under 11 U.S.C. § 547(b). The Bankruptcy Court found (1) that the payments by checks drawn from the PCSS general operating account constituted transfers of an interest of the debtor in property; (2) that the transfers were to a creditor; (3) that the six payments were made for or on account of an antecedent debt owed by the debtor before the transfers were made; (4) that the transfers were made within ninety days of the filing of the PCSS bankruptcy petition; and (5) that the transfers enabled Compaq to receive more than Compaq would have received if the case had been brought under Chapter 7, the payments had not been made, and the creditor received payment on such

---

[1] Check #15478, dated June 2, 2000, in the amount of $118,894, cleared PNC Bank on June 6, 2000. Check #15482, dated June 2, 2000, in the amount of $132,171, cleared PNC Bank on June 6, 2000. Check #15707, dated June 9, 2000, in the amount of $238,335, cleared PNC Bank on June 13, 2000. Check #15806, dated June 16, 2000, in the amount of $125,991, cleared PNC Bank on June 21, 2000. Check #15807, dated June 16, 2000, in the amount of $124,007, cleared PNC Bank on June 21, 2000. Check #16683, dated June 28, 2000, in the amount of $189,226.23, cleared PNC Bank on July 3, 2000.

debt to the extent provided by the provisions of Title 11 of the United States Code. *See* Bankruptcy Order at 3-5 (citing *Southmark Corp. v. Grosz*, 49 F.3d 1111, 1116-17 (5th Cir. 1995); 11 U.S.C. §§ 547(b)(1), 547(b)(2), 547(b)(4)(A), 547(b)(5)).

The Bankruptcy Court also found that PCSS was insolvent on the date of each of the payments. Although the Bankruptcy Court noted the presumption of the debtor's insolvency within ninety days of the filing of the bankruptcy petition, the Bankruptcy Court held that the testimony of Karen G. Nicolaou, a certified public accountant acting as an expert for Compaq, rebutted that presumption. *See* Bankruptcy Order at 6-7 (citing *GasMark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998)). When Nicolaou rebutted the presumption of insolvency, the burden shifted to Mims to establish that PCSS was insolvent on the dates of the payments. *See id.* at 7. The Bankruptcy Court found that (1) PCSS was on its "deathbed" in June 2000; (2) Nicolaou's valuation of Cyclix, at $18 million, was overvalued by considerably more than $1 million; and (3) Mims established by a preponderance of the evidence that the transfers were made while the debtor was insolvent. *See id.* at 11-12. The Bankruptcy Court thus concluded that the transfers were voidable under § 547(b). *Id.* at 12.

The Bankruptcy Court also addressed HP's affirmative defenses. First, the Bankruptcy Court found meritless HP's defense that the payments were made in the ordinary course of business. *See id.* at 15 (citing 11 U.S.C. 547(c)(2)). Second, the Bankruptcy Court credited to HP $11,381.00, as an offset against the preference, due to HP's new value defense under 11 U.S.C. 547(c)(4). *See id.* Third, the Bankruptcy Court found that a settlement agreement between HP and PCSS, executed almost two years before the merger of HP and Compaq, did not govern the subject transfers between PCSS and Compaq. *See id.* at 17.

In summary, the Bankruptcy Court found (1) that transfers totaling $928,624.23 would be avoided as preferences under § 547(b); and (2) that HP should receive a credit of $11,381.00 against the avoided preferences, under § 547(c)(4). *Id.* at 17.

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's conclusions of law *de novo*, but reviews its fact findings only for clear error. *In re Nary*, 253 B.R. 752, 756 (N.D. Tex. 2000) (quoting *In re ICH Corp.*, 230 B.R. 88, 91 n.10 (N.D. Tex. 1999)). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Biesel v. Billings*, No. 3:01-CV-2284-D, 2002 U.S. Dist. LEXIS 7357, at *21 (N.D. Tex. Apr. 24, 2002) (quoting *In re Johnson Sw., Inc.*, 205 B.R. 823, 827 (N.D. Tex. 1997)). "A finding of fact is not clearly erroneous if it is plausible in the light of the record read as a whole." *G.H. Leidenheimer Baking Co., Ltd. v. Sharp*, 2006 U.S. App. LEXIS 2826, at *5 (5th Cir. Feb. 6, 2006) (quotation omitted) (citing *Baker Hughes Oilfield Operations, Inc. v. Cage*, 416 F.3d 394, 402 (5th Cir. 2005)). "This Court does not find facts. Neither is it free to view the evidence differently as a matter of choice." *Biesel*, 2002 U.S. Dist. LEXIS 7357, at *21.

## ANALYSIS

In its brief, HP attacks various aspects of the Bankruptcy Court's finding that PCSS was insolvent when it made the six payments in June 2000. Specifically, HP argues that (1) the testimony of Mims's valuation expert, J. James Jenkins, should have been excluded under

*Daubert* for his failure to use any recognized methodology to analyze PCSS's financial state during the preference period; (2) the Bankruptcy Court should have characterized PCSS as a "going concern" for valuation purposes; and (3) the Bankruptcy Court radically undervalued Cyclix.

Whether or not the Bankruptcy Court credited Jenkins's testimony,[2] its findings concerning the testimony of HP's expert, Karen Nicolaou, support its finding of insolvency. In direct examination, Ms. Nicolaou testified that (1) as of March 31, 2000, PCSS's assets exceeded its liabilities by $12,512,200;[3] (2) as of August 31, 2000, Cyclix had a value of $18,078,949; (3) as of August 31, 2000, based on Nicolaou's valuation of Cyclix, PCSS's assets exceeded its liabilities by $269,725; and (4) based on PCSS's solvency on March 31 and August 31, PCSS was solvent at all points in between those dates, including the dates of the subject payments. Without addressing Nicolaou's valuation as of March 31, 2000, the Bankruptcy Court discredited Nicolaou's valuation as of August 31, 2000, based on Nicolaou's valuation of Cyclix. Without actually placing a value on Cyclix, the Bankruptcy Court stated that Nicolaou's $18 million estimate was overvalued by "considerably more" than $1 million. (That conclusion would render PCSS insolvent as of August 31.) To support this finding, the Bankruptcy Court stated that Cyclix had liability on a substantial debt to PNC Bank, and that after paying the PNC bank debt,

---

[2]The Court affirms the Bankruptcy Court's factual findings without referencing Jenkins's testimony, even though his testimony would tend to support the Bankruptcy Court's factual findings. *See G.H. Leidenheimer*, 2006 U.S. App. LEXIS 2826, at *5 ("A finding of fact is not clearly erroneous if it is plausible in the light of the record read as a whole."). Because the Court need not rely on Jenkins's testimony, the Court declines to consider whether Jenkins' testimony should have been excluded under *Daubert*.

[3]In her testimony, Ms. Nicolaou stated that the difference was $12,512,200; in her report, she stated the difference as $12,512,400. The $200 difference between the two figures does not affect this Court's analysis.

Cyclix would not have sufficient net assets to pay its debts to its other creditors.

The Bankruptcy Court's finding that Nicolaou's $18 million estimate was overvalued by considerably more than $1 million is not clearly erroneous. Nicolaou employed a discounted cash flow analysis based on the income and expenses of Cyclix between January and August of 2000.[4] Nicolaou's estimate was premised on an annual cash flow of Cyclix of $5,425,190, projected for five years, discounted at a rate of 15.25%. The $5,425,190 cash flow was calculated based on an annual gross profit of $10,053,671, annual expenses of $6,271,789, annual net operating income of $3,781,882, annual depreciation and amortization of $1,921,760, and annual capital expenditures of $500,000. Mims produced evidence that Cyclix lost $3.8 million in 1998 and $1.3 million in 1999. Record at 769. Applying Mims' evidence to Nicolaou's estimate of annual gross profit or her estimate of its annual net operating income would result in a substantial decrease in either figure and would decrease the valuation of Cyclix in a discounted cash flow analysis.[5] Because there was evidence that supported the Bankruptcy Court's factual determination that Nicolaou's $18 million estimate overvalued Cyclix by considerably more than

---

[4]Nicolaou's spreadsheet supporting her conclusion is at page 1612 of the trial record.

[5]Additionally, on cross-examination, Nicolaou admitted that her valuation of Cyclix depends on Cyclix producing a cash flow of $5.4 million for the years 2000 through 2004, although the $5.4 million figure was produced only from data between January 1, 2000, and August 31, 2000. Record at 3951-52. The short sample period compared to the lengthy prediction supports a conclusion that the $5.4 million cash flow estimate is inaccurate, which supports a finding that Nicolaou's valuation of Cyclix, based on her cash flow estimate, is inaccurate.
Nicolaou also stated that certain nonrecurring multiple million dollar expenses in November 1998 significantly reduced the operating results for that year. *Id.* at 3953. However, when asked, Nicolaou was not able to opine on those expenses' effect on her Cyclix valuation. *Id.* Nicolaou's failure to include the effect of these expenses in her valuation of Cyclix supports the Bankruptcy Court's finding that her valuation is inaccurate.

$1 million, the Court will not disturb it.[6] See G.H. Leidenheimer, 2006 U.S. App. LEXIS 2826, at *5.

The Court will not disturb the Bankruptcy Court's factual finding[7] that PCSS was insolvent on the dates of the transfers. Nicolaou's finding of solvency on the dates of the transfers was premised on her valuations of March 31, 2000, and August 31, 2000, showing solvency on each of those dates. However, the Bankruptcy Court's finding that Nicolaou's $18 million estimate overvalued Cyclix by considerably more than $1 million undercuts a finding of solvency on the dates of the transfers. Nicolaou's valuation of PCSS on August 31, 2000, assumed a value of $18,078,949 for Cyclix. If Nicolaou's calculations on page 1610 of the record were overvalued by at least a million dollars, PCSS was insolvent on August 31, 2000. As a

---

[6]The Bankruptcy Order states that "there was testimony that the sale [of Cyclix] brought $3.8 million", but the Bankruptcy Court never made a specific valuation of Cyclix. Had the Bankruptcy Court found that Cyclix was worth $3.8 million, the Court would examine such a finding for clear error. Because no such finding was made, however, the Court considers only the Bankruptcy Court's finding that Nicolaou's $18 million estimate was overvalued by considerably more than $1 million.

HP also argues that $18 million is the "conservative" value for Cyclix under Nicolaou's discounted cash flow analysis; assuming a less conservative discount rate, Nicolaou valued Cyclix at $32 million. The existence of a higher valuation is not dispositive; the issue is whether the Bankruptcy Court's factual findings are plausible in the light of the record read as a whole. In that light, the Court finds that the Bankruptcy Court's finding that the valuation of Cyclix was no more than $17,078,949 was not clearly erroneous.

[7]HP argues that the determination of whether a going concern valuation framework applies to value a debtor's assets is a legal determination, reviewed *de novo*, though it may be comprised of factual determinations. See Appellant's Br. at 1 (citing *Chase Manhattan Bank USA NA v. Stembridge*, 394 F.3d 383, 385 (5th Cir. 2004)). However, the Court affirms the Bankruptcy Court's factual findings using Nicolaou's valuation approach, which was premised on a going concern assumption. As a result, any argument challenging the Bankruptcy Court's failure to employ a going concern analysis does not affect this Court's conclusion, including HP's argument that the Bankruptcy Court erroneously used hindsight in determining whether to use a going concern framework. See Appellant's Br. at 20-22 (citing *In re Taxman Clothing Co.*, 905 F.2d 166, 170 (7th Cir. 1990)).

matter of fact, a finding of insolvency on August 31, 2000, supports a finding of insolvency on the dates of the transfers in June 2000.[8] As a result, the Bankruptcy Court's finding of insolvency on the dates of the transfers is not clearly erroneous.

CONCLUSION

The Court **AFFIRMS** the judgment of the Bankruptcy Court.

**SO ORDERED.**

March 14, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[8] In its brief, HP argues that the Court inappropriately relied on "hindsight" evidence in its valuation, and cited cases to bolster its analysis. *See Energy Coop., Inc. v. Cities Serv. Co.*, 109 B.R. 822, 824 (N.D. Ill. 1989) ("But case law precludes hindsight, perfect though that vision may be, so the inquiry as to value needs greater analysis."); *WRT Creditors Liquidation Trust v. WRT Bankruptcy Litig.*, 282 B.R. 343, 383 (W.D. La. 2001) ("With the benefit of perfect hindsight, however, Mr. Spilker uses the unexpected failure of the Lac Blanc well in the fall of 1995 to write the CGC Notes off months earlier. Such use of hindsight is inappropriate in determining value of assets at a particular point in time.") The Court agrees that the use of certain hindsight evidence may be inappropriate. For example, in *WRT Creditors*, in determining the value of certain notes in 1994, the court held that it could not consider a decline of the underlying assets in the fall of 1995 that was neither anticipated nor foreseeable as of year-end 1994. *Id.* at 383. Likewise, in *Energy Coop.*, in determining the value of a refinery during a ninety-day preference period, the court held that it could not solely rely on the value of the refinery after the bankruptcy petition was filed. 109 B.R. at 824.
Although the Court uses Nicolaou's valuation of PCSS and Cyclix on August 31, 2000, even though the ultimate determination is the valuation of PCSS in June 2000, that is not an inappropriate consideration of hindsight evidence. HP does not point to major or unforeseen events between June 2000 and August 31, 2000. HP has not provided evidence that the valuation on August 31, 2000, is not representative of the company's value in June 2000. The Court affirms the Bankruptcy Order based on the approach championed by Nicolaou, HP's expert, that August 2000 was properly considered.

-8-

# CASE CLOSED

CASE NUMBER: 3:05-CV-227-M

DATE: 03.14.06

TRIAL:  YES _____   NO __X__